

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

```
                              )
IN RE                         )
                              )
DAVID T. ROBERTS and          )   CASE NO. 05-92598-H3-7
ROSE M. ROBERTS,              )
                              )
      Debtors,                )
                              )
```

## MEMORANDUM OPINION

The court has considered the "Motion to Compromise Controversy Under Bankruptcy Rule 9019 With the Amway Parties" (Docket No. 40). The following are the Findings of Fact and Conclusions of Law of the court. A separate order will be entered approving the compromise. To the extent any of the Findings of Fact are considered Conclusions of Law, they are adopted as such. To the extent any of the Conclusions of Law are considered Findings of Fact, they are adopted as such.

### Findings of Fact

David T. Roberts and Rose M. Roberts ("Debtors") filed a voluntary petition under Chapter 7 of the Bankruptcy Code on October 15, 2005.[1] Janet Casciato-Northrup ("Trustee") is the Chapter 7 Trustee.

---

[1] Where the singular "Debtor" is used in this opinion, it indicates Debtor David Roberts.

On October 6, 1988, Debtor (using the name David Hicks) applied to become a distributor of Amway products.[2] (Trustee's Exhibit 1). Trustee testified that, during 1998, Debtor sold his Amway business to a third party.

In 1998, Debtor, along with a group of other distributors, filed suit against Amway and others in Texas state court, asserting, inter alia, defamation and RICO claims. The Amway parties[3] removed the case to the United States District Court for the Southern District of Texas, and moved for a stay pending arbitration. The Amway parties counterclaimed against the distributors, including Debtor. Morrison v. Amway Corp., 517 F.3d 248 (5th Cir. 2008).

Trustee testified that the arbitrator's award provided that the distributors would take nothing, and Amway would take nothing, but awarded a $6 million judgment to Amway for attorney fees.

---

[2] Amway is an international multi-level marketer of household products, which distributes products through a network of independent distributors. Distributors earn income based on commissions from their own sales and those generated by distributors they have recruited or their "down-line" recruits.

[3] These parties are identified in the Fifth Circuit's opinion as: Amway Corporation; Dexter Yager, Individually, doing business as Yager Enterprises and Internet Services Corp.; Donald R. Wilson, Individually, doing business as Wow International, Inc.; Randy Haugen, Individually, doing business as Freedom Associates, Inc.; Freedom Tools, Inc.; John Sims, Individually, doing business as Sims Enterprises; Internet Services Corp.; and Yager Enterprises.

The arbitrator made her award on January 13, 2005. The United States District Court confirmed the arbitration award, by order entered September 15, 2005. The distributors, including Debtor, appealed. On appeal, the Fifth Circuit held that the arbitration agreement was illusory and unenforceable. The Fifth Circuit reversed and remanded for proceedings not inconsistent with its decision. <u>Morrison v. Amway Corp.</u>, 517 F.3d 248 (5th Cir. 2008).

On July 21, 2008, Debtors and others filed suit against Amway and others, in Adv. No. 08-3260. In the Second Amended Complaint, the plaintiffs in that adversary proceeding assert claims based on what they believe was an unfair selection of an arbitrator partial to Amway. (Debtor's Exhibit 4).

On May 17-19, 2010, Trustee, along with several other entities, participated in a mediation with the Amway parties. The mediation has resulted in the proposed settlement which is the subject of the instant motion. Under the proposed settlement, the Amway parties will pay $2.86 million, to be disbursed to eleven individuals and thirteen bankruptcy estates. The amount to be disbursed to the estate in the instant case is $221,000.26. The plaintiff parties to the settlement, including Trustee in the instant case, will release the defendants, and the defendants will release the plaintiffs, for all causes of action arising through June 10, 2010.

Debtors oppose the settlement. Debtors contend that Trustee has not adequately evaluated the damages in determining whether to settle.

Trustee testified that she believes the settlement is in the best interest of the estate. The settlement will yield sufficient funds to pay the contingent fee of Brock Akers (Trustee's special counsel), administrative expenses of the estate, and all claims in full.[4]

Trustee testified that, in evaluating the proposed settlement with respect to the estate in the instant case, she evaluated both the relative weight of this estate's claim within the total settlement, and the fairness of the total amount to be received by all the distributors under the settlement.

Trustee testified that she consulted with Akers, Trustee's special counsel who was representing the estate (and the other distributors) in the underlying litigation. She testified that Akers, who represented each of the distributors, evaluated each of the distributors' positions and provided Trustee with information from which she could assess the relative weight to be given to each claim within the settlement fund.

---

[4]The claims register reflects that $4,591,433.51 in claims were filed. However, $4,535,159.80 of that amount is the claim filed by Amway. Trustee testified that the settlement proceeds are sufficient to pay the claims not related to the Amway matter in full.

4

Trustee testified that, in evaluating the gross settlement amount as a whole, she consulted with her bankruptcy attorney, reviewed Debtors' petition and schedules, and reviewed documents (including the transcript of the arbitration proceeding).

Debtors listed the litigation against the Amway parties in their Schedule B.  In Schedule B, Debtors listed a value of $6,710,719 for claims against Amway and the other Defendants.  In their Schedule C, Debtors scheduled as exempt pursuant to 11 U.S.C. § 522(d)(5), $9,683.00 of the recovery in the litigation.

With respect to the damages asserted in the underlying litigation, Trustee testified that she reviewed the damage model prepared by Steven J. Lawrence, CPA.  Lawrence's report calculates a value of $3,710,719 for damages as to Debtors against the Amway parties.  (Debtor's Exhibit 1).  However, in the arbitration proceeding, Lawrence testified that his projection of damages was based on responses to a questionnaire in which he had instructed the distributors to "think big," in estimating the number of distributors who would become their down-line recruits.  He testified that he did not check to determine whether the numbers provided by the distributors were plausible, accurate, or whether they had any basis in the actual historical performance of the distributors.  He testified that

his damage model presumed that all of the distributors reached the "Diamond" level.[5]  (Trustee Exhibit 9).

Trustee testified that she discussed the damages with Debtor and Debtors' counsel, and reviewed correspondence from Debtor.

Trustee testified that she also reviewed the damage model of Amway's expert.  She testified that Amway's model of Debtors' damages in the instant case was based on the historical performance of the Debtors in the instant case.  She testified that she checked the historical numbers set forth on the Amway expert's chart against Debtor's tax returns, to the extent the tax returns were available to her.[6]

Debtor asserted, in an email dated May 19, 2010 (the last day of the mediation) that he and Randy Councill (another of the distributors) had sought to require that their counsel, Akers, hire an expert to review additional damages.  When Akers refused, Debtor contended that Akers had a conflict of interest in representing both Debtor and the estate.  Debtor, however, suggested that he would not oppose a settlement in which Debtors

---

[5] The Fifth Circuit noted that the Diamond level is among the highest levels of success.  Morrison v. Amway Corp., 517 F.3d 248, 250 (5th Cir. 2008).

[6] The court notes that the historical numbers indicate that Debtor had gross income of $764,473 and a net loss of $13,460 from his Amway business during the period from 1993-2001. (Trustee's Exhibit 10).

6

"are able to 'net' at least $250,000 after ALL court expenses, mediation, costs and attorneys fees." (Trustee Exhibit 7).[7]

With respect to the claims in Adversary No. 08-3260, Trustee testified that she consulted with Akers and her bankruptcy attorney, David Jones. She testified that she was unable to identify any damages, other than perhaps Akers' attorney fees. She testified that no attorney fees have yet been earned, because Akers' contract calls for a contingent fee.[8]

Trustee testified that, in the thirteen bankruptcy cases in which the respective bankruptcy estates are part of the proposed settlement, the courts in ten of the thirteen have approved the compromise. As to the other three, including the instant case, motions to approve the compromise remain pending.[9]

---

[7] Debtor and Councill subsequently apparently threatened a legal malpractice action against Akers' firm, which they apparently were willing to forgo, in exchange for $350,000. (Trustee's Exhibit 8). Trustee testified that she has forwarded the letter in which Debtor and Councill made this apparent threat to the United States Attorney for the Southern District of Texas.

[8] Debtor asserts that the estate is improperly releasing claims to which he has a postpetition right, by settling those in Adversary No. 08-3260. Those claims accrued prepetition, when the arbitrator ruled, and the United States District Court approved the ruling. Thus, those claims are property of the bankruptcy estate and may properly be released by the Trustee in the proposed settlement. See In re Educators Group Health Trust, 25 F.3d 1281 (5th Cir. 1994).

[9] The court notes that one of those cases, In re Cutaia, Case No. 05-48675-H3-7, is before this court. The compromise has not drawn objection in the Cutaia case. This court anticipates approving the settlement in the Cutaia case.

7

Conclusions of Law

In deciding whether to approve a settlement of litigation, the court should consider the terms of the compromise in comparison with the likely rewards of litigation.  The court must evaluate:  1) the probability of success in the litigation, with due consideration for the uncertainty in fact and law; 2) the complexity and likely duration of the litigation and any attendant expense, inconvenience and delay; and 3) all other factors bearing on the wisdom of the compromise.  <u>Matter of Cajun Elec. Power Cooperative, Inc.</u>, 119 F.3d 349 (5th Cir. 1997), <u>citing</u> <u>In re Jackson Brewing Co.</u>, 624 F.2d 599 (5th Cir. 1980).  Under the third "catch-all" provision, the court should consider the best interests of the creditors, with proper deference to their reasonable views, and the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.  <u>In re Foster Mortgage Corp.</u>, 68 F.3d 914 (5th Cir. 1995).  The court need not conduct a mini-trial to determine the probable outcome of any claims waived in the settlement.  The court needs only become apprised of the relevant facts and law in order to make an informed and intelligent decision.  <u>In re Cajun Elec. Power Co-Op, Inc.</u>, 119 F.3d 349 (5th Cir. 1997).

In the instant case, the proposed settlement agreement is reasonable, fair, and equitable.  The result of litigation is

uncertain, given the wide disparity in results in Lawrence's projections, Amway's projections, the (subsequently vacated) ruling of the arbitrator, and Debtor's apparent offers to settle. The litigation has been pending for over twelve years, and has been extremely costly. The compromise is the result of arms-length bargaining at a mediation among numerous parties. The compromise calls for payment in full of the creditors of this bankruptcy estate. The court concludes that the compromise should be approved.

Based on the foregoing, a separate Order will be entered approving the compromise.

Signed at Houston, Texas on January 5, 2011.

_____
LETITIA Z. PAUL
UNITED STATES BANKRUPTCY JUDGE